UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                         :
  KEVIN TERRY,                               :
                                     :
                       Plaintiff,    :           1:21-cv-8995-GHW
                                     :
             -v -                    :        MEMORANDUM OPINION
                                     :           AND ORDER
  N.Y.C./D.O.C./V.C.B.C. WARDEN CARTER;   :
  N.Y.C./D.O.C./V.C.B.C. CAPTAIN GUERRA;   :
  3-AA HOUSING UNIT CAPTAIN;            :
  N.Y.C./D.O.C./V.C.B.C. CAPTAIN JOHN     :
  DOE INTAKE SUPERVISING CAPTAIN;      :
  N.Y.C./D.O.C./V.C.B.C. CAPTAIN        :
  HORTON,                               :
                                     :
                     Defendants.   :
                                     :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/17/2023

GREGORY H. WOODS, District Judge:

       Plaintiff Kevin Terry was a pre-trial detainee in the custody of the New York City

Department of Correction on Rikers Island.  One day after he was sent to a holding cell without a

functioning toilet, and was left there without food for up to 8 hours, he signed the complaint that

initiated this action.  It was filed shortly thereafter.  Because it is apparent from the face of the

complaint that the Plaintiff did not properly exhaust his administrative remedies as required under

the Prison Litigation Reform Act, 42 U.S.C. § 1997e, Defendants' motion to dismiss the complaint is

GRANTED.

I.     **BACKGROUND**[1]

a.  **Facts**

Mr. Terry was incarcerated in the Vernon C Bain Center on Rikers Island.  Mr. Terry alleges

that as of October 5, 2021 he, and a number of other inmates in his unit, had not had toilet paper,

soap or toothbrushes for "approx. 2-3 days."  Dkt. No. 3 (the "Complaint" or "Compl.") at 4.  One

or more inmates raised this issue with "Supervisor Captain Guerra."  *Id.* at 5.  Mr. Terry does not

identify himself as the person who brought the issue to the attention of Captain Guerra.  "[A]fter

bring[ing] this issue up to Captain Guerra[,] she pressed her emergency security button, which led to

all the plaintiffs herein put into hand restrains and taken to the facilities['] holding cells . . . ."  *Id.*

The conditions in the facility's intake holding cells were not pleasant:  "the toilet water was

turned off" and Mr. Terry was not given food or water "for 7-8 hours."  *Id.*  Mr. Terry alleges that,

because of this, he was hungry and thirsty for "an extremely long time."  *Id.* at 6.  He also alleges

that he was tired, "robbed of proper nutrition," and that he suffered from nausea, headaches, and

"psychological harm."  *Id.*

b.  **Procedural History**

The complaint in this case was initially filed by a group of 25 plaintiffs, acting *pro se*.  Compl.

All but three of the detainees named in the complaint also signed the complaint.  Dkt. No. 1 at 1.

Mr. Terry signed the complaint on October 6, 2021—just one day after the incident described in the

complaint.[2]  Another plaintiff, Michael Lee, filed the complaint by delivering it to prison authorities

for mailing.  Mr. Lee asserts in the complaint that the date on which he gave the complaint to prison

officials for mailing was October 12, 2021.  *Id.* at 7-9.

---

[1] Unless otherwise noted, the facts are taken from the Complaint, Dkt. No. 37, and are accepted as true for the purposes
of this motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "the tenet that a court
must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009).
[2] All of the other putative plaintiffs also signed the complaint on October 6, 2021.  Compl. Ex. A.

Chief Judge Laura Taylor Swain ordered that Mr. Terry's action be severed from those of the other putative plaintiffs listed in the complaint.  Dkt. No. 1.  On December 7, 2021, the Court ordered service and entered a *Valentin* order, directing the Corporation Counsel's office to identify the individual defendants identified, but inadequately named, in the complaint.  Dkt. No. 8.  That order required that Mr. Terry amend the complaint to name any individuals identified in response to the order within 30 days after receipt.  *Id.* at 2.  The Corporation Counsel's office responded to that order on January 27, 2022.  Dkt. No. 12.  The response identified the full names of three individual defendants together with their shield numbers.  And the response instructed Mr. Terry as follows: "Pursuant to the Court's Order, please amend your Complaint to include the name of the appropriate captain who is the subject of your allegations within 30 days of receipt of this letter." Dkt. No. 12.-1 at 2.  Mr. Terry did not amend the complaint within 30 days as required by the Court's order.

The Court granted Defendants leave to file a motion to dismiss the Complaint on March 8, 2021.  Dkt. No. 21.  The Court's order required that any motion be filed by April 4, 2022; Plaintiff's opposition, if any, was to be filed by May 2, 2022.  *Id.*  The order informed Plaintiff that "[i]f Plaintiff fails to file an Opposition by that deadline, the Court will consider the motion unopposed." *Id.*

Defendants moved to dismiss Plaintiff's complaint on two principal grounds.  First, they argued that it was apparent from the face of the complaint that Mr. Terry had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e.  Second, Defendants argued that the complaint failed to state a claim for violation of Plaintiff's rights under the Eighth Amendment of the United States Constitution.[3]  On the same day,

---

[3] Defendants did not move to dismiss any retaliation claim asserted in the complaint.  As noted, the Court is required to read the *pro se* complaint leniently.  Since the Complaint alleges that Mr. Terry and the other putative plaintiffs were sent to the facility's intake holding cells, where they experienced challenging conditions, as a result of one or more inmates'

Defendants issued a notice to Mr. Terry notifying him that failure to timely respond to the motion would allow the Court to accept Defendants' factual assertions as true pursuant to Federal Rule of Civil Procedure 12(b) and Local Rule 12.1.  Dkt. No. 18.  According to the briefing schedule entered by the Court on March 8, 2022, Plaintiff's opposition to the motion to dismiss was due no later than May 2, 2022.  Dkt. No. 15.  To date, Plaintiff has not filed an opposition to Defendants' motion to dismiss his complaint.[4]

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

---

complaints regarding the conditions of their confinement, the Complaint could reasonably be read to raise a First Amendment retaliation claim.  *See Dolan v. Connolly*, 794 F.3d 290, 294–95 (2d Cir. 2015) ("To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'") (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).  The Court takes no position regarding the sufficiency of the allegations with respect to such a claim, but believes that, viewed leniently, the *pro se* Complaint can be construed to raise such a claim.

[4] The Court must consider the sufficiency of Plaintiff's allegations notwithstanding the lack of an opposition. "[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."  *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint," "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). Legal conclusions, unlike facts, are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. A complaint that offers "labels and conclusions" or "naked assertions" without "further factual enhancement" will not survive a motion to dismiss. *Id.* (internal alternation omitted) (citing *Twombly*, 550 U.S. at 555, 557).

Because Mr. Terry is proceeding *pro se*, the Court must liberally construe his submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558-59 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III.   DISCUSSION

This is not the first opinion issued in the series of cases that were spawned by the original complaint.  As described above, the case was severed into a number of separate cases by Chief Judge Swain.  Every one of the district judges who have ruled on the motions to dismiss with respect to the claims pursued by Mr. Terry in this case has concluded that the claims asserted in the Complaint could not proceed because the plaintiffs did not properly exhaust their administrative remedies under the PLRA.  *See Kirby v. Carter,* No. 21CV9056ATKHP, 2022 WL 17979848 (S.D.N.Y. Dec. 9, 2022), *report and recommendation adopted,* No. 21CIV9056ATKHP, 2022 WL 17979802 (S.D.N.Y. Dec. 28, 2022); *Mejia v. Carter,* No. 121CV09049ATSDA, 2022 WL 17653826 (S.D.N.Y. Nov. 2, 2022), *report and recommendation adopted,* No. 21CIV9049ATSDA, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022); *McCray v. Carter,* No. 21CIV9051PAEGWG, 2022 WL 6854524 (S.D.N.Y. Oct. 12, 2022), *report and recommendation adopted,* No. 21CIV9051PAEGWG, 2022 WL 16541173 (S.D.N.Y. Oct. 27, 2022); *Kingsberry v. Carter,* No. 21-CV-9076 (JGK), 2022 WL 10142889 (S.D.N.Y. Oct. 17, 2022); *Corchado v. Carter,* No. 21-CV-8984 (VSB), 2022 WL 4096165 (S.D.N.Y. Sept. 7, 2022); *Lee v. Carter,* No. 21CV8629PAERWL, 2022 WL 3441654 (S.D.N.Y. July 28, 2022); *Thompson v. Carter,* No. 21 CIV. 8982 (LGS), 2022 WL 2533112 (S.D.N.Y. July 7, 2022).  Informed by those decisions, the Court reaches the same conclusion here.[5]

The Complaint is dismissed because it is apparent from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies.  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[5] In *Thompson v. Carter*, No. 21 CIV. 8982 (LGS), 2022 WL 2533112 (S.D.N.Y. July 7, 2022)—another case based on the same Complaint—Judge Lorna Schofield carefully analyzed the same issues presented here.  There is no need to recreate the wheel.  As a result, with gratitude to Judge Schofield for her careful analysis, the Court's analysis here tracks much of her decision, with some elaboration regarding the burden on Defendants with respect to all aspects of their affirmative defense.

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA requires 'proper exhaustion' of administrative remedies, meaning exhaustion in 'compliance with an agency's deadlines and other critical procedural rules.'" *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 16 F.4th 67, 81 (2d Cir. 2021). "[A]side from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust . . . .'" *Hayes v. Dahlke*, 976 F.3d 259, 269 (2d Cir. 2020) (internal quotation marks omitted) (alterations in original).

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638, 136 S. Ct. 1850, 1856, 195 L. Ed. 2d 117 (2016). "[A]n administrative remedy is *de facto* unavailable and, thus, exhaustion is not required:  (1) where the process 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) where the process is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Saeli v. Chautauqua County*, 36 F.4th 445, 453 (2d Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).  Thus for a claim to be barred as a result of the PLRA's administrative exhaustion requirements, the plaintiff must have failed to exhaust *available* administrative remedies.

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see also Hickman v. City of New York*, No. 20 Civ. 4699, 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021) (same).  Because failure to exhaust administrative remedies is an affirmative defense, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  "However, a district court still may dismiss a complaint for failure to exhaust

administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams*, 829 F.3d 118, 122 (2d Cir. 2016).

As Judge Schofield aptly observed, because exhaustion of administrative remedies is an affirmative defense "[i]t stands to reason that a plaintiff similarly need not plead alternatively the unavailability of administrative exhaustion." *Thompson*, 2022 WL 2533112, at *2. Still, a number of courts in this district have required just that. *See, e.g., Girodes v. City of New York*, No. 17 CIV. 6789 (RWS), 2018 WL 3597519, at *4 (S.D.N.Y. July 26, 2018) ("In sum, because Plaintiff has failed to allege exhaustion of the administrative remedies available to him prior to filing suit, the Defendants' motion to dismiss is granted."). The Court questions the reasoning of those decisions that have placed the burden on a plaintiff to plead the non-availability of a grievance process. *See Jones*, 549 U.S. at 216 ("inmates are not required to specially plead or demonstrate exhaustion in their complaints.").[6]

"At Rikers Island, grievance procedures are governed by the Inmate Grievance and Request Program ('IGRP')." *Hickman*, 2021 WL 3604786, at *3. Courts in this Circuit routinely take judicial notice of the IGRP. *Id.* "The IGRP applies to '[a]ny inmate who is directly and personally affected by an issue, condition, practice, service, or lack of an accommodation with regard to any issue that may arise in connection with their incarceration or action relating to their confinement.'" *Massey v. City of New York*, No. 20 Civ. 5665, 2021 WL 4943564, at *7 (S.D.N.Y. Aug. 30, 2021) (alteration in original).

---

[6] The Court recognizes that requiring a defendant to show that a grievance process was available has a practical impact on the ability of courts to conclude that a claim is barred by the PLRA in the context of in a motion to dismiss. That is because courts can take judicial notice of the existence of a grievance procedure and its contents, but may find it substantially more challenging, if not impossible, to take judicial notice of the availability of the process. As described above, an existing grievance process may be unavailable "(1) where the process 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; . . . [and] (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Saeli*, 36 F.4th at 453 (quoting *Ross*, 578 U.S. at 643-44). Thus, the fact that a grievance process exists does not mean that it is available.

The version of the IGRP effective as of December 10, 2018 establishes the following procedure:  First, the aggrieved person may submit a grievance to the Office of Constituent and Grievance Services (the "OCGS"). N.Y.C. Dep't of Corr., Directive 3376R-A at § V (December 10, 2018), https://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf.  The Grievance Coordinator must propose a resolution within seven business days.  *Id.* at § VI.A.1. Second, if the aggrieved person is not satisfied with the OCGS's proposed resolution, the aggrieved person may appeal to the facility's Commanding Officer.  *Id.* at § VI.A.6.ii.  The OCGS must forward the appeal to the Commanding Officer within one business day, and the Commanding Officer must render a disposition within five business days of receiving it. *Id.* at § VII.A, B.  Third, if the aggrieved person is not satisfied with the Commanding Officer's disposition, the aggrieved person may appeal to the facility's Division Chief within two days.  *Id.* at § VII.D.  The OCGS must forward the appeal to the Division Chief within one business day, and the Division Chief must render a disposition within five business days after receiving it.  *Id.* at § VIII.A, B.  Fourth, if the aggrieved person is not satisfied with the Division Chief's disposition, the aggrieved person may appeal to the Central Office Review Committee (the "CORC") within two days.  *Id.* at §§ VIII.B, IX. The OCGS must forward the appeal to the Director of Constituent and Grievance Services within one business day, and the CORC must generally render a disposition within five business days of receiving it.  *Id.* at § IX.B, D-F.  "[T]o satisfy the exhaustion requirement, an inmate must use all available administrative mechanisms, including appeals, 'through the highest level for each claim.'" *Ford v. Aramark*, No. 18 Civ. 2696, 2020 WL 377882, at *4 (S.D.N.Y. Jan. 23, 2020); *accord Massey*, 2021 WL 4943564, at *7.

Here, it is apparent that Plaintiff did not exhaust administrative remedies given the duration of the exhaustion process and the time between the events alleged and the filing of the Complaint. The Complaint alleges that the incident at issue took place on October 5, 2021.  Plaintiff signed the

complaint on October 6, 2021—just one day after the incident itself.  The Complaint was delivered to jail officials on October 12, 2021, and the Complaint was received by the Court on October 20, 2021.  Thus, only fifteen days elapsed between the incident and the filing of the Complaint.  Even assuming that Plaintiff filed a grievance the same day as the incident and immediately appealed every adverse decision, he could not have exhausted his appeals.  The facility was entitled to take twenty-five days or more to resolve all levels of appeal.  Courts in this district "have dismissed claims as a matter of course because it would have been temporally impossible for the plaintiffs to have exhausted their administrative remedies before filing the complaints," where "the period between the date of the alleged incident and the filing of the complaint was 21 or fewer days." *Miller v. Annucci*, No. 17 Civ. 4698, 2019 WL 4688539, at *12 (S.D.N.Y. Sept. 26, 2019) (collecting cases).

In this case, the Court believes that a reasonable inference can be drawn from the face of the complaint that Mr. Terry's filing prior to the completion of the grievance process was not justified by the unavailability of the grievance process—in other words, that he failed to exhaust an available grievance process.  *See Kingsberry v. Carter*, 2022 WL 10142889 (S.D.N.Y. October 17, 2022) (holding in a case based on the same Complaint that:  "In this case, it is clear from the face of the complaint that administrative grievance procedures were available to the plaintiff but that he did not exhaust these procedures before initiating this action.").  Only one day elapsed between the day on which the incident occurred and Mr. Terry's signature on the Complaint.  The Court can infer from the limited gap in time between the incident and the date of the complaint that no effort was undertaken to test the grievance process before it was filed.  Although the Complaint alleges an act that might be viewed as hostile—the transfer of the inmates to the facility's holding cells in response to the complaint—unavailability of administrative remedies under the PLRA cannot be "based upon an act of violence or other hostile act . . . because of a generalized fear that any grievance or complaint could lead to more violence . . . ." *Lucente v. County of Suffolk*, 980 F.3d 284, 312 (2d Cir. 2020).

10

Administrative procedures also were not unavailable merely because the IGRP, at § V.D, prohibits grievance class actions, since the individual plaintiffs here were still able to file their own individual grievances.  *See Green Haven*, 16 F.4th at 81.

Mr. Terry has filed no response to this motion, and therefore has presented no facts to the Court that suggest that Court's inference regarding the availability of the grievance process is unsound.  Had Mr. Terry suggested that the grievance process was unavailable, the Court likely would have converted the motion into one for summary judgment under Rule 12(d).  *See* Fed. R. Civ. P. 12(d); *see, e.g.*, *Richardson v. Jakubowski*, No. 16 Civ. 6038, 2019 WL 4674199, at *2 (W.D.N.Y. Sept. 25, 2019).[7]

Because Plaintiff is *pro se*, he is granted leave to respond to Defendants' motion by filing a letter with the Court alleging any facts showing that the IGRP grievance process was *de facto* unavailable to him, for example, in one of the three ways listed above.  Should he choose to do so, he must file his letter with the Court no later than February 3, 2023.  If Plaintiff chooses not to file such a letter, the case will be dismissed without prejudice for failure to exhaust administrative remedies.  *See Hayes*, 976 F.3d at 272 ("And it is well-settled that '[s]ubsequent exhaustion after suit is filed . . . is insufficient' and 'will not save a case from dismissal.'") (alteration in original).  In other words, Plaintiff would be permitted to exhaust his administrative remedies and then file a new action based on the same underlying facts.

## IV.    CONCLUSION

For the foregoing reasons, it is apparent from the face of the Complaint that Plaintiff has not exhausted his administrative remedies.  Plaintiff may submit a letter to the Court if he wishes to

---

[7] The Court might have reached a similar conclusion had this issue not been exhaustively addressed, and consistently resolved, by other courts in the district on the basis of the same Complaint and arguments.

present evidence or argument regarding the unavailability of the facility's grievance process no later than February 3, 2023.  If he does not do so by that date, the Court expects to dismiss this action.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 16 and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:  January 17, 2023
New York, New York

_____
GREGORY N. WOODS
United States District Judge